JOHN B. PEEL AND WIFE, LIZZIE PEEL; ED BULLOCK, NAOMI BUL-
LOCK MOORE, WINSLOW BULLOCK; ANNIE MAY BULLOCK, JOHN
BULLOCK, ROMEO BULLOCK; THE LAST THREE PERSONS NAMED BEING
MINORS APPEARING BY THEIR NEXT FRIEND, ED BULLOCK, v. J. D.
CALAIS AND WIFE, ISABELLE C. CALAIS; CHARLES T. HOYT, MAR-
JORIE HOYT CARTER AND HUSBAND, H. C. CARTER III; ISABELLE
B. HOYT, A WIDOW; AND DR. H. C. NEBLETT.

(Filed 20 September, 1944.)

**1. Boundaries §§ 2, 3a: Deeds § 12—**

A general description giving the boundaries of a tract of land is not too
vague to permit the reception of parol evidence to explain, locate, or make
certain the calls or descriptive terms used in the deed, but never to
enlarge, supplement, or add to the same.

**2. Boundaries § 3e—**

When land is described as adjoining or bounded by certain other tracts,
and (1) there are certain other identifying terms such as "known as the
A tract"; or (2) there are references to an identifiable muniment 'or
source of title, such as the same land conveyed by B to C; or (3) the
land is designated by such a term as the home place of D; or (4) adjoin-
ing landowners are named and it is shown that grantor has no other land
in the vicinity which may be embraced within such bounds, G. S., 39-2, the
description is not void for vagueness and it may be aided by parol
evidence.

**3. Same—**

When, however, the general description would apply to one tract as
well as to another, or the land in controversy is not a distinct tract, or is
a part of a larger tract, the description is void and cannot be aided by
evidence *aliunde*.

**4. Boundaries § 3a: Deeds § 12—**

At all events, the description as it may be explained by oral testimony must identify and make certain the land intended to be conveyed. Failing in this, the deed is void.

APPEAL by plaintiffs from *Johnson, Special Judge,* at February Term, 1944, of BEAUFORT. New trial.

Petition for partition in which the defendants answered, pleading sole seizin. The plaintiffs are heirs at law of one R. C. Peel, deceased. The defendants claim title to the land in question by *mesne* conveyances from Samuel Peel, one of the children of R. C. Peel.

In 1910, R. C. Peel owned a tract of land in Beaufort County on the south side of the Military Road and extending to a line 60 feet north of the high-water mark of Pamlico River. His father devised to him the adjoining strip of land 60 feet wide bounded on the north by the first tract and on the south by Pamlico River. Thus he owned all the land lying between Military Road on the north, the John Peel land on the east, Pamlico River on the south, and the Griffin land on the west.

On 28 December, 1910, Peel conveyed to his daughter a tract of land containing 20 acres, being approximately the middle third of the first tract and extending over into the second tract 30 feet. On the same date he executed and delivered to his son, Samuel Peel, a deed containing the description as follows:

"In Beaufort County, N. C., adjoining lands of John Peel, Griffin and others, bounded as follows: Beginning on Griffin's line 30 ft. from the high-water mark; thence an easterly course, 30 ft. from the water to John Peel's line; thence beginning at a stake on this line 300 ft. from John Peel's line and running a northerly course to the Military Road, to a stake 300 ft. from John Peel's line; thence with said line to the river, containing 22 acres more or less."

The petitioners, contending that R. C. Peel died intestate, seized and possessed of the second tract 60 feet wide extending along the banks of the Pamlico River, instituted this action for the partition thereof. Said tract is described in the will of George Peel and in the petition as follows:

"A strip of land lying on Pamlico River, and running back from said river a distance of (60) feet, bordering on the east by the land conveyed by me to John B. Peel, on the north by my own land; on the west by Ellen Griffin land; and on the south by Pamlico River."

On a former appeal, *Peel v. Calais,* 223 N. C., 368, this Court reversed judgment of nonsuit and remanded the cause for a new trial.

When the cause again came on for trial in the court below, the documentary evidence relating to the title was offered. In addition thereto,

defendants offered evidence tending to show that "the high-water mark" referred to in the deed of R. C. Peel to Samuel Peel related to the high-water mark of Pamlico River; that the Griffin property bounded the whole tract, made up of the two parcels, on the west from Pamlico River to Military Road, and that the John Peel land bounded the whole tract on the east from the river to the Military Road. Issues were submitted to and answered by the jury as follows:

"1. Does the deed of R. C. Peel and wife, Medora Peel, to Samuel Peel, dated December 28, 1910, registered in Book 167, page 68, embrace and convey the land in controversy, indicated on the Lewis map by the figures 2-9-8-1? Answer: Yes.

"2. Do the mortgage deed made by Carnie Bullock to H. B. Thompson, registered in Book 250, page 472, and said Thompson's foreclosure deed to Medora Peel, registered in Book 274, page 280, embrace that portion of the land in controversy indicated on the Lewis map by the figures 6-9-8-X; and do said mortgage and deed convey all right, title and interest that Carnie Bullock may have had in that part of the land in controversy so indicated on the Lewis map by the figures 6-9-8-X? Answer:

"3. Have the defendants for more than seven years next before the commencement of this action been in the open, notorious, continuous, adverse possession, under known and visible lines and boundaries and under colorable title, of that part of the land in controversy as indicated on the Lewis map by the figures 2-6-X-1? Answer:"

The record discloses that the court also prepared a separate set of issues, some of which were answered by it, as follows:

"1. Does the deed of R. C. Peel and wife, Madora Peel, to Samuel Peel, dated December 28, 1910, registered in Book 167, page 68, embrace and convey the lands in controversy, indicated on the Lewis map by the figures 2-9-8-1? Answer: (Submitted to jury on separate paper.)

"2. If not, does the deed of R. C. Peel to Madora Peel, dated February 21, 1940, recorded in Book 219, page 273, embrace and convey that part of the land in controversy indicated on the Lewis map by the figures 2-6-X-1? Answer: Yes, by the Court.

"3. Does the deed of Madora Peel and Samuel Peel and wife to Isabelle C. Calais, dated March 4, 1932, registered in Book 290, page 591, embrace that part of the land in controversy indicated on the Lewis map by the figures 2-6-x-1; and does said deed convey all right, title and interest which Madora Peel may have had in said portion of the land in controversy so indicated by the figures 2-6-x-1? Answer: Yes, by the Court.

"4. Have the defendants for more than seven years next before the commencement of this action been in the open, notorious, continuous

adverse possession, under known and visible lines and boundaries and under colorable title, of that part of the land in controversy as indicated on the Lewis map by the figures 2-6-x-1? Answer: (Submitted to jury on separate paper.)

"5. Do the mortgage deed made by Carnie Bullock to H. B. Thompson, registered in Book 250, page 472, and said Thompson's foreclosure deed to Madora Peel, registered in Book 274, page 280, embrace that portion of the land in controversy indicated on the Lewis map by the figures 6-8-8-X; and do said mortgage and deed convey all the right, title and interest that Carnie Bullock may have had in that part of the land in controversy so indicated on the Lewis map by the figures 6-9-8-X? Answer: (Submitted to jury on separate paper.)

"6. Does the deed of Madora Peel and Samuel Peel and wife to Isabelle C. Calais, dated March 4, 1932, and registered in Book 290, page 591, embrace that part of the land in controversy indicated on the Lewis map by the figures 6-9-8-X; and does said deed convey all the right, title and interest which Madora Peel may have acquired under the mortgage of Carnie Peel and the foreclosure deed of H. B. Thompson, mortgagee in and to that portion of the land in controversy indicated on the Lewis map by the figures 6-9-8-X? Answer: Yes, by the Court.

"7. Does the deed of Madora Peel and Samuel Peel and wife to Isabelle C. Calais, registered in Book 290, page 591, convey any and all the right, title and interest of Samuel Peel and wife in and to the land in controversy indicated on the Lewis map by the figures 2-9-8-1? Answer: Yes, by the Court. See allegation of Petition."

Upon the coming in of the verdict, judgment was entered decreeing that plaintiffs have no right, title or interest in or to the land in controversy. Plaintiffs excepted and appealed.

*John H. Bonner and H. S. Ward for plaintiffs, appellants.*
*Grimes & Grimes and Rodman & Rodman for defendants, appellees.*

BARNHILL, J. The particular description in the Samuel Peel deed, as it relates to the land in controversy, is patently defective. *Peel v. Calais,* 223 N. C., 368. There are two lines which may be fitted to the land in controversy but there is no attempt to close the calls so as to embrace the same. The defendants must resort to the general description "a certain tract of land in Beaufort County, N. C., adjoining the land of John Peel, Griffin and others." Hence the exceptions entered by plaintiffs and presented on this appeal challenge the sufficiency of the evidence *aliunde* to support the verdict on the first issue.

G. S., 8-39; C. S., 1783, authorizes parol evidence to identify land sued for and to fit a vague description contained in the muniment of

title to the land alleged to be conveyed thereby. Even so, it was held in *Blow v. Vaughn,* 105 N. C., 198, 10 S. E., 891, and *Wilson v. Johnson, ibid.,* 211, 10 S. E., 895, that descriptions of land such as "adjoining the lands of A, B, and others, containing 25 acres more or less" are too vague and indefinite to be aided by parol proof. Following these decisions the Legislature in 1891 enacted Chapter 465, Public Laws 1891 (now G. S., 39-2), and this Court, independently of the statute, in *Perry v. Scott,* 109 N. C., 374, 14 S. E., 294, disapproved the decisions in these two cases and expressly held that a general description giving the boundaries of the tract of land is not too vague to permit the reception of parol evidence to explain, locate, or make certain the calls or descriptive terms used in the deed, but never to enlarge, supplement, or add to the same.

Subsequent opinions of this Court, applying the principles enunciated in the *Perry case, supra,* and the proviso of the statute, G. S., 39-2, C. S., 992, have established well-recognized rules controlling decision as to the sufficiency of parol evidence offered in aid of an ambiguous general description and to fit such description to the land in controversy.

When land is described as adjoining or being bounded by certain other tracts, and (1) there are certain other identifying terms such as "known as the Sellars tract," *Euliss v. McAdams,* 108 N. C., 507, 13 S. E., 162, "a part of the Mary A. Bissett estate," owned by grantors, *Bissette v. Strickland,* 191 N. C., 260, 131 S. E., 655, "the Abby Dough tract," *Bailey v. Hayman,* 218 N. C., 175, 10 S. E. (2d), 667; or (2) there are references to an identifiable muniment or source of title such as "the same land that James Peel conveyed to Hiram Edgerton by deed," *Moore v. Fowle,* 139 N. C., 51, 51 S. E., 796, "being the land conveyed by E. W. Davis to Joseph Morton et al.," school committee, etc., *Hudson v. Morton,* 162 N. C., 6, 77 S. E., 1005; or (3) the land is designated by such terms as the "Home Place" of grantors, *Lewis v. Murray,* 177 N. C., 17, 97 S. E., 750, "my farm," *Sessoms v. Bazemore,* 180 N. C., 102, 104 S. E., 70; or (4) adjoining landowners are named and it is shown that the grantor does not have any other land in the same vicinity which at all corresponds to or may be embraced within such bounds, G. S., 39-2; *Perry v. Scott, supra; Patton v. Sluder,* 167 N. C., 500, 83 S. E., 818; *Self Help Corporation v. Brinkley,* 215 N. C., 615, 2 S. E. (2d), 889, the description is not void for vagueness and it may be aided by parol evidence.

When, however, the general description would apply to one tract as well as to another, or the land in controversy is not a distinct tract, or is a part of a larger tract, the description is void and cannot be aided by evidence *aliunde. Perry v. Scott, supra,* and cases cited; *Katz v. Daughtrey,* 198 N. C., 393, 151 S. E., 879.

At all events, the description as it may be explained by oral testimony must identify and make certain the land intended to be conveyed. Failing in this, the deed is void.

Other authorities are gathered and discussed in the following cases: *Euliss v. McAdams, supra; Stewart v. Cary,* 220 N. C., 214, 17 S. E. (2d), 29; *Self Help Corporation v. Brinkley, supra; Bailey v. Hayman, supra.*

Consideration of the general description relied on by defendants in the light of these principles of construction leads us to the conclusion that it has not been aided or explained by the oral testimony so as to fit it to the *locus in quo.* The description contains no identifying term other than two adjoining tracts. It may be fitted to the whole tract or to the tract first conveyed to R. C. Peel as well as to the *locus. Katz v. Daughtrey, supra.* The property in controversy is not the only land which would at all correspond to the description contained in the deed.

The deed does not purport to convey two separate tracts of land. Yet the disputed river tract is separated and cut off from the main body of land therein conveyed by the first call for a line from a point in the Griffin line to a point in the John Peel line.

Under the circumstances of this case, the acreage call is not of material significance. The tract on Military Road conveyed in the deed contains 20.41 acres and that tract together with the disputed land is less than twenty-two acres. While acreage may at times be material, it is not sufficient here to overcome the vagueness and uncertainty in other respects.

When R. C. Peel conveyed a part of his land to his daughter and a part to his son Samuel Peel, he reserved the western section. Later he conveyed this part from Military Road to the river and including more than one-third of the disputed tract to his wife Medora. This, it would seem, indicates a lack of intent to include the river tract in the Samuel Peel deed.

The indicated defects are of such nature as to render the description entirely too vague and uncertain to permit the conclusion that it includes the thirty-foot strip on the river.

It follows that the court erred in declining to give the peremptory instruction on the first issue requested in apt time by plaintiffs.

The court answered the third of the issues prepared for its own use "Yes." Exception thereto cannot be sustained.

In 1932 Samuel Peel and wife and Medora Peel executed deed to Isabelle Carter Calais in which the description includes the thirty-foot strip on the river. This deed clearly embraces the land between the points 2-6-X-1 on the map. This is a part of the land conveyed to Medora Peel by R. C. Peel in 1920.

But plaintiffs insist that the fee simple title thereto vested in Medora was not conveyed. This contention is based on language contained in the deed as follows:

"Medora Peel for and in consideration of $5.00 hereby joins in the execution of this deed for the purpose of releasing the above tract of land from a certain indebtedness to her, which is duly registered in the office of Register of Deeds of Beaufort County and also to release any right, title and interest she may have therein."

This language is not only sufficient to release her indebtedness against the land described, a part of which she did not own, but also to convey all right, title and interest she had in the premises. Certainly it is not in conflict with the general granting clause in the deed. As, on this record, she owned the land indicated in the issue, 2-6-X-1 on the Lewis map, her deed conveyed quitclaim title thereto.

Issue No. 4 on the list prepared by the court for its own use, being No. 3 on the list submitted to the jury, was not answered either by the court or the jury. Exception thereto presents no question for decision.

Adverse possession, even under color of title, does not ripen title as against tenants in common under twenty years. Even so, we only review decisions of the trial courts. Hence the plea of ownership by adverse possession under the deed of 1932 from Samuel Peel and others to Isabelle Carter Calais remains open for future determination.

For the reasons stated, the judgment entered must be vacated and the cause remanded for further proceedings in accord with this opinion.

New trial.